# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AL MADANY ISLAMIC CENTER OF NORWALK, INC., a Connecticut non-stock corporation,<br>　　　　　　　　Plaintiff,<br>　v.<br>CITY OF NORWALK, CONNECTICUT, and CITY OF NORWALK ZONING COMMISSION,<br>　　　　　　　　Defendants. | No. 3:12-cv-00949-RNC |

**PLAINTIFF AL MADANY ISLAMIC CENTER OF NORWALK, INC.'S FIRST SET OF DOCUMENT REQUESTS TO ALL DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 34 and Local Rule 26, Al Madany Islamic Center of Norwalk, Inc. requests that the City of Norwalk, Connecticut, and the City of Norwalk Zoning Commission respond to these document requests and produce the requested documents by January 21, 2013, or as required by the Federal Rules of Civil Procedure.

**DEFINITIONS**

The following terms in the document requests are defined below:

1. The term "127 Fillow Street" means the property owned by Al Madany located at 127 Fillow Street, Norwalk, Connecticut, located at the intersection of Fillow Street and Taylor Avenue in Norwalk, Connecticut.

2. The term "Amended Complaint" refers to Al Madany's Amended Complaint against Defendants filed in the U.S. District Court for the District of Connecticut on December 5, 2012, Docket #57.

3. The term "Answer and Affirmative Defenses" means the Defendants' Answer and Affirmative Defenses filed in the U.S. District Court for the District of Connecticut on December 20, 2012, Docket # 63.

4. "All" means "any and all"; "any" means "any and all"; "and" encompasses "or" and "or" encompasses "and"; "including" means "including but not limited to"; "each" shall be construed to include and encompass "all."

5. The term "Al Madany" means the Al Madany Islamic Center of Norwalk, Inc., and its present and former agents, officers, directors, employees, partners or affiliates.

6. The term "City of Norwalk" means the City of Norwalk, Connecticut, a municipality located in Fairfield County in the State of Connecticut, and its present and former agents, officers, directors, employees, partners, affiliates, or other persons acting or purporting to act on its behalf, and includes the Mayor and Common Council members of the City of Norwalk.

7. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8. The term "concerning" means relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as the context makes appropriate.

9. The term "Defendants" means the City of Norwalk, Connecticut, and the City of Norwalk's Zoning Commission, and their present and former agents, officers, directors, employees, partners, affiliates, or any other persons acting or purporting to act on their

behalf. The City of Norwalk, Connecticut, includes the Mayor and Common Council members of the City of Norwalk.

10. The term "Department of Public Works" refers to the Department of Public Works of the City of Norwalk, and its present and former agents, officers, directors, employees, partners, affiliates, or any other persons acting or purporting to act on its behalf.

11. The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term. A request for production of "documents" shall encompass, and the response shall include, electronically stored information, as included in Federal Rule of Civil Procedure 34. The term "document" includes application forms, site plans, traffic studies, technical documents and any subsequent revisions, staff review and comments, memorandums, agendas, research, reports, meeting minutes, sign-in sheets, fliers, hand-outs, letters, emails, photographs, 3D graphics and models, transcripts, and audio/video recordings of any community meetings, public meetings, public hearings, work sessions or meetings.

12. The term "First Special Permit Application" means the application for a special permit by Al Madany to construct a Place of Worship submitted to the Zoning Commission in April of 2010.

13. The term "Non-Religious Development" means any non-religious or secular assembly or institutional land use including retreat centers, restaurants, condominiums, cemeteries, charitable or philanthropic institution, private clubs, assembly halls, private or public schools or educational institutions, public museums, firehouses, conservation

developments, golf clubs, waterfront clubs, nursery schools or child day-care centers, or athletic field facilities.

14. The term "Place of Worship" means any religious assembly or institutional use including churches, synagogues, temples, mosques, monasteries or any religious land use.

15. The term "Plan Review Committee" refers to the committee of the Zoning Commission charged with the review of the objective requirements for permit applications.

16. The term "Residential Zone" means zones designated as AAA, AA, A, B, C, and D residence zones within the City of Norwalk, Connecticut as those terms are used in the City of Norwalk's Zoning Regulations, Article 20 and Article 30, Sections 118-310 through 118-360, and according to the City of Norwalk's Building Zoning Map.

17. The term "Second Special Permit Application" means the application for a special permit by Al Madany to construct a Place of Worship submitted to the Zoning Commission on or about December 22, 2011.

18. The term "Special Meeting Minutes" means the Zoning Commission's Special Meeting Minutes, Section III(A) ("Report of Plan Review Committee, James White, Chair"), dated June 6, 2012.

19. The term "Stonegate" means the Stonegate Condominium Association, Inc., and its present and former agents, officers, directors, employees, partners, affiliates, or other persons acting or purporting to act on its behalf.

20. The term "Zoning Commission" means the City of Norwalk's Zoning Commission organized under Chapter 124, Section 8-1 of the Connecticut General Statues and authorized by Article II, Section 79-3 of the Code of the City of Norwalk, and its

committees, present and former agents, officers, directors, employees, partners, affiliates, or other persons acting or purporting to act on its behalf.

## INSTRUCTIONS

1. The following requests are continuing and must be supplemented pursuant to Federal Rules of Civil Procedure 26(e).

2. If the production of any documents responsive to these requests is objected to on the ground of privilege or work product, or for any other reason, with respect to each such document state:

   a. the date appearing on such document, or if no date appears, the date on which such document was prepared;

   b. the name of each person to whom such document was addressed;

   c. the name of each person, other than the addressee(s) identified in subparagraph (b) above, to whom such document or copy thereof was sent, or with whom such document was discussed;

   d. the name of each person who signed such document or, if not signed, the name of each person who prepared it;

   e. the general nature or description of such document, and its number of pages; and

   f. the specific ground(s) upon which the privilege or work product rests.

3. In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort not appearing on any other copy.

4. The documents produced in response to these document requests shall be organized and designated to correspond to the categories in these document requests or produced as they are maintained in the normal course of business, and in either case:

   a. all associated file labels, file headings, and file folders shall be produced together with the responsive documents from each file and each file shall be identified as to its owner or custodian;

   b. all documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies;

   c. all photocopies shall be stapled or clipped as the originals; and

   d. each page shall be given a discrete production number.

5. The present tense includes the past and future tenses. The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whichever makes the request most broad.

6. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender, in singular or plural, as in each case is most appropriate.

7. None of the definitions or requests set forth below shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the definition or request.

## DOCUMENT REQUESTS

1. Documents concerning Al Madany's First Set of Interrogatories to the City of Norwalk and the City of Norwalk Zoning Commission, including documents consulted, relied upon, or reviewed by the Defendants in preparing the Defendants' responses to Al Madany's Interrogatories to the Defendants.

2. Documents concerning Al Madany's First Special Permit Application.

3. Documents concerning Al Madany's Second Special Permit Application.

4. Documents concerning internal communications of the Defendants relating to Al Madany's plans to develop 127 Fillow Street.

5. Documents concerning communications between the City of Norwalk and the Zoning Commission regarding Al Madany's First Special Permit Application or plans to develop 127 Fillow Street.

6. Documents concerning communications between the City of Norwalk and the Zoning Commission regarding Al Madany's Second Special Permit Application or plans to develop 127 Fillow Street.

7. Documents concerning communications between the Defendants and Al Madany regarding Al Madany's First Special Permit Application or plans to develop 127 Fillow Street.

8. Documents concerning communications between the Defendants and Al Madany regarding Al Madany's Second Special Permit Application or plans to develop 127 Fillow Street.

9. Documents concerning communications between the Defendants and third parties, including Stonegate and members of the public, regarding Al Madany's First Special Permit Application or plans to develop 127 Fillow Street.

10. Documents concerning communications between the Defendants and third parties, including Stonegate and members of the public, regarding Al Madany's Second Special Permit Application or plans to develop 127 Fillow Street.

11. Documents concerning the Plan Review Committee's consideration of Al Madany's First Special Permit Application or plans to develop 127 Fillow Street.

12. Documents concerning the Plan Review Committee's consideration of Al Madany's Second Special Permit Application or plans to develop 127 Fillow Street.

13. Documents concerning Defendants' first stated reason for denial in the Special Meeting Minutes, Section III(a)(1): "The claimed accessory uses in the large rear building have not been clearly defined by [Al Madany] as required in the Special Permit application instructions and section 118-1450B of the regulations."

14. Documents concerning Defendants' second stated reason for denial in the Special Meeting Minutes, Section III(a)(2): "[Al Madany's] traffic report failed to identify any uses or analyze any uses of the rear building as required in the Special Permit application instructions and section 118-1450B of the regulations."

15. Documents concerning traffic reports, studies and analysis concerning the streets adjacent to or in the proximity of 127 Fillow Street aside from those prepared in connection with Al Madany's First and Second Special Permit applications.

16. Documents concerning Defendants' third stated reason for denial in the Special Meeting Minutes, Section III(a)(3): "The density of the use and the bulk of [Al Madany's] buildings (118-1450C1a) is not in harmony with the general purpose and intent of the regulations, to wit, it is substantially larger than most places of worship, it would not blend well with the surrounding residential neighborhood, and could not be adequately screened from the neighbors' views."

17. Documents concerning Defendants' fourth stated reason for denial in the Special Meeting Minutes, Section III(a)(4): "[Al Madany's] rear building is much larger than the main building (place of worship), and therefore, we find that it does not comply with section 118-310B(4) in that it is not incidental to and customarily associated with the principal use, further, it is inconsistent with the low density nature of the zone and with local street characteristics (section 118-310A)."

18. Documents concerning Defendants' fifth stated reason for denial in the Special Meeting Minutes, Section III(a)(5): "[Al Madany's] proposal to share parking with an off site church does not comply with the parking regulations (section 118-1220 H and K), to wit, no long term parking agreement was submitted, nor any proof provided that that those spaces are available for use during the times needed by the applicant. Moreover, the off site parking proposal itself is acknowledgement that there is not sufficient parking on the site."

19. Documents concerning Defendants' sixth stated reason for denial in the Special Meeting Minutes, Section III(a)(6): "[Al Madany's] rear building which is not part of the religious function is not eligible for the height exemption under section 118-810K, and therefore; it exceeds the height maximum requirement."

20. Documents concerning Defendants' seventh stated reason for denial in the Special Meeting Minutes, Section III(a)(7): "Due to insufficient parking, the bulk of the buildings, and the lack of screening, [Al Madany's] project will adversely impact property values and therefore does not comply with section 118-1450C(1)(h) – impact on neighborhood properties as compared to uses and structures permitted as of right."

21. Documents concerning Defendants' eighth stated reason for denial in the Special Meeting Minutes, Section III(a)(8): "[Al Madany's] project proposed inadequate screening and buffering (118-1450C(1)(g)) which is not in harmony with the general purpose and intent of the regulations. The proposal has not, and perhaps, cannot propose large enough plantings to screen the buildings due to their height and bulk."

22. Documents concerning Defendants' ninth stated reason for denial in the Special Meeting Minutes, Section III(a)(9): "Due to inadequate parking as well as the bulk of the rear building and its ability to accommodate approximately 400 people seated around tables or 850 people seated in chairs we believe that the project will impact stable traffic flow (118-1450C(1)(b)). [Al Madany] submitted inadequate traffic analyses with this regard and we feel that the oppositions' Traffic Engineer gave credible testimony as to adverse impact of traffic."

23. Documents concerning the Department of Public Works's approval and reversal of approval of Al Madany's proposed driveway access of 127 Fillow Street in Al Madany's First Special Permit Application.

24. Documents concerning whether Al Madany's Second Permit Application met all requirements established by the City of Norwalk's Zoning Regulations.

25. Documents concerning a proposed new development of a Place of Worship or the modification or expansion of an existing Place of Worship in a Residential Zone in the City of Norwalk by any entity from 1975 to the present.

26. Documents concerning a proposed new development of a Non-Religious Development or the modification or expansion of an existing Non-Religious Development in a Residential Zone in the City of Norwalk by any entity from 1975 to the present.

27. Documents concerning a proposed new development of a Place of Worship or the modification or expansion of an existing Place of Worship by any entity in a Residential Zone in the City of Norwalk for which the Zoning Commission has examined or relied upon traffic studies based on traffic patterns of another religious institution or assembly from 1975 to the present.

28. Documents concerning a proposed new development of a Non-Religious Development or the modification or expansion of an existing Non-Religious Development by any entity in a Residential Zone in the City of Norwalk for which the Zoning Commission has examined or relied upon traffic studies based on traffic patterns of another non-religious institution or assembly from 1975 to the present.

29. Documents concerning any Special Permit Application by any entity located at the following street addresses in Norwalk, Connecticut:

   1) Academy St. (019)
   2) Anchor Rd. (001) aka 1 Surf Av.
   3) Calf Pasture Beach Rd. (41)
   4) Canfield Ave. (014)
   5) East Ave. (060)
   6) Fillow St. (165)
   7) Fox Run Rd. (288) (Fox Run Elementary School)
   8) Half Mile Rd. (023)
   9) Highview Ave. (001)
   10) Nathan Hale Dr. (010)
   11) Pulaski St. (29 & 35)
   12) Richards Ave. (259)
   13) Rowayton Ave. (210)
   14) Scribner Ave. (216)
   15) Tindall Ave / New Canaan / Fair (Norwalk Storage Campus/Building)
   16) West Ave. (303 aka 295)
   17) West Ave. (303) / Mathews Park
   18) West Rocks Rd. (057)
   19) West Rocks Rd. (139)
   20) West Rocks Rd. (238)

30. Documents concerning the Defendants' allegations in their Answer and Affirmative Defenses that Counts I, II, III, IV, V, VI, VII, VIII, and IX of Al Madany's Amended Complaint "fail[] to state a claim upon which relief may be granted."

31. Documents concerning the Defendants' allegations in their Answer and Affirmative Defenses that Counts I, II, III, IV, V, VI, VIII, and IX of Al Madany's Amended Complaint are "not ripe for adjudication."

32. Documents concerning the Defendants' allegations in their Answer and Affirmative Defenses that Counts I, II, III, IV, V, VI, VII, VIII, and IX of Al Madany's Amended

Complaint are "barred because [Al Madany] failed to exhaust its administrative remedies.

33. Documents concerning the Defendants' allegations in their Answer and Affirmative Defenses that the Court "lacks subject matter jurisdiction over [Al Madany's] administrative appeal" under Count VII of Al Madany's Complaint.

34. Documents concerning the official certified copy of the City of Norwalk's Zoning Regulations as were formally adopted or in use at any time between 1975 and the present, and any subsequent amendments.

35. Documents concerning official certified copies of City of Norwalk's Maps in hard copy and electronic format and all GIS shape files used to create such maps, including the City of Norwalk's Building Zone Map, and any version thereof in effect at any time between 1975through the present.

Dated: December 21, 2012

*Peter K. Vigeland* /s/

Peter K. Vigeland
Sadaf R. Abdullah
H. Lawrence Stierhoff
Victoria J. Lee
*Admitted pro hac vice*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8807
peter.vigeland@wilmerhale.com
Fed. Bar #CT 24180

John F. Fallon
53 Sherman Street
Fairfield, CT 06824
Tel: (203) 256-3247
jfallon@snet.net
Fed. Bar # CT 06085

Roman P. Storzer
*Admitted pro hac vice*

STORZER & GREENE, P.L.L.C.
1025 Connecticut Avenue, Northwest
Suite One Thousand
Washington, D.C. 20036
storzer@storzerandgreene.com
Tel: (202) 857-9766

*Attorneys for Plaintiff Al Madany Islamic Center of Norwalk, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2012 I caused the foregoing Plaintiff Al Madany Islamic Center of Norwalk, Inc.'s First Set of Document Requests to All Defendants to be served by electronic mail and by First Class mail to the following:

Thomas R. Gerarde
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1121
Tel: (860) 249-1361
Email: tgerarde@hl-law.com

Robert F. Maslan, Jr.
Corporation Counsel
City of Norwalk Law Department
P.O. 799
Norwalk, CT 06854-0799
Tel: (203) 854-7750
Email: rmaslan@norwalkct.org

_____
H. Lawrence Stierhoff, Esq.