# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| AL MADANY ISLAMIC CENTER OF NORWALK, INC., a Connecticut non-stock Corporation, | : <br> : <br> : <br> : CIVIL ACTION NO. |
| Plaintiff, | : <br> : 3:12-cv-00949 (MPS) |
| vs. | : <br> : |
| CITY OF NORWALK, CONNECTICUT, and CITY OF NORWALK ZONING COMMISSION, | : <br> : <br> : |
| Defendants. | : JULY 29, 2013 |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF AMENDED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS FOR FAILURE TO STATE A CLAIM**

Marci A. Hamilton, *pro hac vice*
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone (215) 353-8984
Facsimile (215) 493-1094
Email:  hamilton.marci@gmail.com

Joseph P. Williams (ct14809)
Katherine R. Husband (ct28564)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Telephone (860) 251-5000
Facsimile  (860) 251-5218
Email:  jwilliams@goodwin.com
Email:  khusband@goodwin.com

Robert F. Maslan, Jr. (ct07919)
Corporation Counsel
City of Norwalk Law Department
P. O. Box 799
Norwalk, CT  06854-0799
Telephone (203) 854-7750
Facsimile (203)-854-7901
Email: rmaslan@norwalkct.org

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

    I.    PLAINTIFF FAILS TO CARRY ITS BURDEN TO ESTABLISH RIPENESS IN THIS CASE ............................................................................1

    II.    THE SECOND CIRCUIT DECISION IN <u>WESTCHESTER DAY SCHOOL V. VILLAGE OF MAMARONECK</u>, 504 F.3D 338 (2D CIR. 2007) DOES NOT ADDRESS THE CONSTITUTIONAL ARGUMENTS RAISED IN THE MOTION TO DISMISS. ..........................................................................................5

        A.    The U.S. and the Plaintiff Have No Answer to the Fact that RLUIPA Regulates State and Local Law, Which is Non-Economic in Nature, and Therefore Exceeds Congress's Power Under the Commerce Clause ........................................5

        B.    Neither the U.S. Nor the Plaintiff Has Met Defendants' Argument that RLUIPA Violates the Establishment Clause or Distinguished <u>Texas Monthly v. Bullock</u>, 489 U.S. 1 (1989) from RLUIPA ..........................................................12

    III.    PLAINTIFF'S INVOCATION OF "UNFETTERED DISCRETION" IN THE NORWALK SPECIAL PERMIT PROCESS IS WRONG. .........................................................................................14

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Agostini v. Felton, 521 U.S. 203 (1997)..........................................................................................14

Americans United for Separation of Church and State v. Prison Fellowship
 Ministries, Inc., 509 F.3d 406 (8th Cir. 2007) ...................................................................14

Bowen v. Roy, 476 U.S. 693 (1986)..................................................................................................8

Cambodian Buddhist Soc. of Connecticut, Inc. v. Planning & Zoning Comm'n of
 Town of Newtown, 285 Conn. 381 (2008).......................................................................14

City of Arlington, Tex. v. F.C.C., 133 S. Ct. 1863 (2013) .......................................................10, 11

City of Boerne v. Flores, 521 U.S. 507 (1997)........................................................................ passim

Cutter v. Wilkinson, 544 U.S. 709 (2005) ................................................................................10, 13

Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 884
 (1990)..................................................................................................................................8

Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).......................................................................................12

Gil v. Inland Wetlands and Watercourses Agency of Town of Greenwich, 219
 Conn. 404, 593 A.2d 1368 (1991) ......................................................................................3

Gonzales v. Raich, 545 U.S. 1 (2005)...............................................................................................6

Grumman Hill Montessori Ass'n, Inc. v. Planning and Zoning Comm'n, No. FST
 CV-10-6004144-S, 2012 WL 4466345, at *11-12 (Conn. Super. Ct. Sept.
 11, 2012) .............................................................................................................................4

Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc., 452 U.S. 264 (1981) ......................12

Irwin v. Planning & Zoning Commission, 244 Conn. 619 (1998) .................................................14

Lemon v. Kurtzman, 403 U.S. 602 (1971) ........................................................................................5

Marbury v. Madison, 5 U.S. 137 (1803).........................................................................................10

Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir. 2004)................................9

Mitchell v. Helms, 530 U.S. 793 (2000).........................................................................................14

Murphy v. New Milford Zoning Comm'n, 402 F.3d 342 (2d Cir. 2005).....................................2, 4

National Broadcasting Co. v. United States, 319 U.S. 190 (1943)................................................11

National Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566 (2012) .................................................6

New York v. United States, 505 U.S. 144 (1992).......................................................................9, 10

Ox Ridge Hunt Club v. Planning & Zoning Comm'n of Town of Darien,
 CV020191228, 2004 WL 574686 (Conn. Super. Ct. Mar. 8, 2004)................................14

Port Clinton Associates v. Board of Selectmen of Town of Clinton, 217 Conn.
 588, 587 A.2d 126, cert. denied, 502 U.S. 814 (1991) ......................................................4

Reno v. Condon, 528 U.S. 151 (2000).................................................................................6, 11

Sherbert v. Verner, 374 U.S. 398 (1963) ....................................................................................8

St. Vincent de Paul Place of Norwich, Inc. v. City of Norwich, No. 3:13-cv-00017
    (WWE), 2013 WL 997076 (D. Conn. Mar. 13, 2013).......................................................3

Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989).........................................................5, 12, 13

Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568 (1985), overruled on
    other grounds, Lansing Schools Educ. Ass'n v. Lansing Board of Educ.,
    487 Mich. 349, 352-53 (2010) ..........................................................................................1

United States v. Cioni, 649 F.3d 276 (4th Cir. 2011), cert. denied, 132 S. Ct. 437
    (2011)...............................................................................................................................11

United States v. Lopez, 514 U.S. 549 (1995) ............................................................................11

United States v. Morrison, 529 U.S. 598 (2000) ........................................................................6

United States v. Windsor, 133 S. Ct. 2675 (2013).....................................................................11

Westchester Day School v. Village Of Mamaroneck, 504 F.3d 338 (2d Cir. 2007) ...............5, 10

Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson
    City, 473 U.S. 172 (1985).................................................................................................4

**Statutes**

Conn. Gen. Stat. § 8-8................................................................................................................1, 14

Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. §§
    2021b et seq. .....................................................................................................................9

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (1993) ("RFRA").....................6, 7, 10

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc
    ("RLUIPA") .............................................................................................................. passim

**Constitutional Provisions**

U.S. Const. Art. V.....................................................................................................................10

**INTRODUCTION**

Defendants stand by each of their arguments in the Motion to Dismiss and Motion for Judgment on the Pleadings. The following Reply clarifies the Defendants' position, in light of the confusion and misdirection introduced by the Plaintiff and the United States.

As an initial matter, the Plaintiff's objection to the Defendants' reliance on the Return of Record is misplaced. Pl.'s Opp'n to Defs.' Mot. to Dismiss, July 12, 2013, ECF No. 145, at 25 (hereinafter "Pl.'s Opp'n."). The Defendants are not picking and choosing random public records irrelevant to the case, but rather are relying upon the documents that would be central in an appeal and would fix the administrative record for judicial review had Plaintiff followed the course that every other developer would have, and filed an appeal from the initial denial in the Superior Court. See Conn. Gen. Stat. § 8-8(i).

**I.   PLAINTIFF FAILS TO CARRY ITS BURDEN TO ESTABLISH RIPENESS IN THIS CASE.**

The ripeness defect in this case goes to this Court's jurisdiction and needs to be considered before any of the other issues that have been raised.[1] Plaintiff bears the burden of proving ripeness, Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 580-581 (1985), overruled on other grounds, Lansing Schools Educ. Ass'n v. Lansing Board of Educ., 487 Mich. 349, 352-53 (2010), and has failed to adequately respond to Defendants' ripeness arguments. Plaintiff's injuries are speculative at best, because it should have filed an appeal in the Connecticut Superior Court, as any other land use applicant receiving the same denial would

---

[1]   The United States states that it is not taking a position on ripeness, and will not be involved in the legal issues unless the constitutional issues are reached. Intervenor USA's Mem. In Defense of RLUIPA, July 9, 2013, ECF No. 142, at 1-2 (hereinafter "U.S. Mem").

have done. Such a speculative injury is inadequate to justify federal review. Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005).

Connecticut's Home Rule system means that a superior court appeal is not a leap from the local government to the state on land use law, but rather that the state appeal is an integral part of the Connecticut land use system, which starts with the Zoning Commission. Defs.' Amended Mot. to Dismiss and for Judgment on the Pleadings, June 19, 2013, ECF No. 132, at 10 (hereinafter "Defs.' Mot. to Dismiss"). Moreover, Plaintiff had other options to obtain a "final, definitive position" on the appropriateness of its application, such as filing an application with the Zoning Commission based on an amended plan addressing the reasons for denial, filing a zoning appeal in state court, or both. Defs.' Mot. to Dismiss, at 17. By permitting the Plaintiff to head straight to federal court without taking any further action following an initial denial, this Court would be acting as a zoning board of appeals without the benefit of review by those with far greater knowledge of the Connecticut law of land use, which is an inappropriate role for the federal courts. Murphy, 402 F.3d at 349. With three avenues open to Plaintiff to obtain the relief it now seeks in federal court, and Plaintiff choosing to take none of those routes,[2] the Plaintiff's claims simply are not ripe.

Plaintiff misstates the fitness-for-review prong of the ripeness test. Plaintiff re-phrases the test as a need for a "final decision." Pl.'s Opp'n, at 13. Rather, for ripeness purposes, the Court needs to know the "final, definitive position" of the land use board as to how the property could be used. Defs.' Mot. to Dismiss, at 17. Here, the Zoning Commission's decision and

---

[2] Plaintiff mischaracterizes Defendants' position when it states it would have had to pursue all three available paths. Pl.'s Opp'n, at 11, 14. That is not the Defendants' argument. Rather, Plaintiff's decision to follow the initial denial with an immediate filing in federal court presents this Court with a case in which the local government and the state have had no opportunity to clarify or narrow the issues, or to determine whether the denial was supported by substantial evidence in the record before the Commission.

record discussions hardly suggest that it would not consider a more reasonable plan -- on the contrary, phasing the two buildings was suggested by the Zoning Commission and rejected by the Plaintiff. R72. The Commission's reasons for denial are mainly based on the size of the structure and therefore are capable of being addressed in a modification, so there is no support for Plaintiff's assertion that "no iteration" of its plan would ever have been approved. Pl. Opp'n at 23. See Gil v. Inland Wetlands and Watercourses Agency of Town of Greenwich, 219 Conn. 404, 416-17, 593 A.2d 1368 (1991) (affirming that "rejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews"). Nor are Defendants arguing for administrative exhaustion, as Plaintiff alleges, Pl.'s Opp'n at 21, but rather for the requirement that Plaintiff obtain a final, definitive determination of the application of local and state law to its application before it rushes into federal court.

     Plaintiff also misguidedly argues that St. Vincent de Paul Place of Norwich, Inc. v. City of Norwich, No. 3:13-cv-00017 (WWE), 2013 WL 997076 (D. Conn. Mar. 13, 2013), is not on point. Pl.'s Opp'n. at 23, n.9. As Plaintiff notes, the plaintiff in that case failed to brief the argument that variances were mutually exclusive of special permits, but Plaintiff fails to square its actions with the court's reasoning in that case. There, the plaintiff had applied for a variance, which had yet to be ruled on, and the court found that the case was not yet ripe for review. St. Vincent de Paul Place, 2013 WL 997076, at *3-4. As Plaintiff concedes in its Opposition, had it filed a § 8-8 appeal, there might have been a reversal in the Zoning Commission decision, thereby mitigating (or more accurately, eliminating) the claimed injury. Pl.'s Opp'n, at 20. If the St. Vincent plaintiff's claims were not ripe pending a variance application, neither can Plaintiff be in federal court where it did not bother to file an appeal. Since Plaintiff's injury is

therefore potentially temporary and speculative, the exhaustion requirements have not been met. Murphy, 402 F.3d at 348-49.

Plaintiff further argues that an appeal to the Superior Court would be solely remedial in nature and, therefore, unnecessary under the reasoning of Murphy, 402 F.3d at 349. Pl.'s Opp'n, at 16-17. Yet, the Connecticut Superior Court is not limited to a remedial role, but rather can also "reverse or affirm, wholly or partly, or may modify or revise the decision appealed from," as Defendants noted in their opening brief. Defs.' Mot. to Dismiss, at 11. Plaintiff seems not to be aware that the Superior Court can overturn a special permit denial, order approval, and specify the types of conditions of approval that the Zoning Commission can consider. This is commonplace. See, e.g., Grumman Hill Montessori Ass'n, Inc. v. Planning and Zoning Comm'n, No. FST CV-10-6004144-S, 2012 WL 4466345, at *11-12 (Conn. Super. Ct. Sept. 11, 2012). Such a decision would not only have "defined" Plaintiff's injury, Pl.'s Opp'n., at 21, but also made federal court review superfluous.[3]

Plaintiff also skirts the Supreme Court's reasoning in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), in which the Court held that even several denials of a land use application were inadequate to establish federal court jurisdiction. Id. at 193-194. Defendants stand by all of the arguments in their Motion to Dismiss and for Judgment on the Pleadings. This case is not ripe, and should be dismissed for lack of jurisdiction.[4]

---

[3] See Port Clinton Associates v. Board of Selectmen of Town of Clinton, 217 Conn. 588, 587 A.2d 126, cert. denied, 502 U.S. 814 (1991).

[4] Plaintiff argues that Count V is a facial challenge to the special use permit system in Norwalk and, therefore, ripeness is irrelevant. Count V should be dismissed for failure to state a claim, because it is a vague and incomprehensible attack on special use permit systems generally. As Defendants established in their opening motion, courts have routinely and uniformly rejected such broad-based attacks on special use permits. Defs.' Mot. to Dismiss, at 34.

## II. THE SECOND CIRCUIT DECISION IN <u>WESTCHESTER DAY SCHOOL V. VILLAGE OF MAMARONECK</u>, 504 F.3D 338 (2D CIR. 2007) DOES NOT ADDRESS THE CONSTITUTIONAL ARGUMENTS RAISED IN THE MOTION TO DISMISS.

The Plaintiff and United States rely heavily on the Second Circuit's decision in <u>Westchester Day School v. Village Of Mamaroneck</u>, 504 F.3d 338 (2d Cir. 2007), as though it puts Defendants' constitutional arguments to rest. U.S. Mem., at 7, 9, 10, 11, 13, 14, 33, 34, 35, 36, 37; Pl.'s Opp'n, at 27, 28, 40, 42. In fact, the decision did not address the Defendants' arguments. <u>Westchester Day School</u> is the only case in which the Second Circuit has decided RLUIPA's constitutionality, yet it does not consider the arguments raised by Defendants.

In <u>Westchester Day School</u>, the Second Circuit addressed RLUIPA's constitutionality on two narrow grounds. First, the court held that it was a proper exercise of Congress's commerce power, because it has a "jurisdictional hook" that requires a case-by-case analysis of whether the building project in that case affects commerce. 504 F.3d at 354. The court simply did not consider the constitutional defect that RLUIPA regulates activity that is non-economic.

The court also considered whether RLUIPA violated the Establishment Clause through the lens of <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971). <u>Westchester Day School</u>, 504 F.3d at 355. But it never considered the Establishment Clause defect identified by the Supreme Court in <u>Texas Monthly, Inc. v. Bullock</u>, 489 U.S. 1 (1989), and relied upon by Defendants.

### A. The U.S. and the Plaintiff Have No Answer to the Fact that RLUIPA Regulates State and Local Law, Which is Non-Economic in Nature, and Therefore Exceeds Congress's Power Under the Commerce Clause

The United States and the Plaintiff fail to explain how the unique characteristic of RLUIPA -- that it regulates land use *law*, and not land use itself -- can be consistent with the requirements of federalism. The law is non-economic in nature, and therefore beyond

- 5 -

Congress's power under the Commerce Clause.  National Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2587 (2012) (Roberts, C.J.); id. at 2644 (Scalia, J., dissenting.); United States v. Morrison, 529 U.S. 598, 617 (2000); Reno v. Condon, 528 U.S. 151 (2000); cf. Gonzales v. Raich, 545 U.S. 1 (2005).  Defendants could not have made this fatal constitutional defect plainer.  Defs.' Mot. to Dismiss, at 24-25.  Yet, neither the Plaintiff nor the United States wrestle with the novelty at the heart of RLUIPA that makes it particularly offensive to the states:  it shoves aside local and state land use law through the mechanism of strict scrutiny.  No federal statute can do this, and none has ever tried, except for the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (1993) ("RFRA"), which was held unconstitutional on federalism, among other, grounds.  City of Boerne v. Flores, 521 U.S. 507 (1997); Defs.' Mot. to Dismiss at 20-30.  The United States actually sidesteps RLUIPA's constitutional defects, by stating that it does not "commandeer[] the legislative processes of the states."  Pl.'s Opp'n, at 45.  Yet, it avoids dealing with the fact that RLUIPA unilaterally wipes out much of state and local land use law that inherently and most appropriately belongs to the states and local governments.

No court to date has dealt with this particular defect, despite the United States' attempts to paint the existing circuit case law as though it is universal and comprehensive.  In fact, very few circuits have considered RLUIPA's constitutionality, and those that have, have not addressed many of the arguments raised in the Defendants' Motion to Dismiss.  No circuit, including the Second Circuit, has ruled on the Defendants' argument that RLUIPA is unconstitutional because it regulates that which is non-economic in nature.

The federal government hangs its Commerce Clause theory on the presence of a "jurisdictional hook," as though it is a talisman immunizing RLUIPA from a federalism challenge. U.S. Mem., at 12, n.6.  A jurisdictional hook, however, does not make up for the fact

that a law is governing that which is non-economic in nature. Moreover, the federal government's attempt to distinguish Sebelius misses the point. U.S. Mem., at 15. It is just the latest case holding that Congress may not use the commerce power to regulate non-economic activity. Defs.' Mot. to Dismiss, at 25-27.

Many circuits – the First, Third, Fourth, Fifth, Sixth, Eighth and Tenth – have not yet addressed RLUIPA's constitutionality. The fact that a few circuits have upheld a statute against some arguments does not mean that the statute is then immune from attack. Moreover, as Plaintiff and the U.S. are well aware, no circuit had held that RLUIPA's predecessor, RFRA, was unconstitutional before the Supreme Court struck it down in City of Boerne v. Flores, 521 U.S. 507, 535 (1997).

The United States asserts that RLUIPA's substantial burden provision, 42 U.S.C. § 2000cc(a), is inapplicable to neutral, generally applicable laws. U.S. Mem., at 12, n.6. As Defendants have explained, the decision in this case was based on neutral, generally applicable land use principles, Defs.' Mot. to Dismiss at 30, and the special use permit system is governed by standard land use principles which do not invite members to vote arbitrarily, as is evidenced by the careful, detailed and thorough written statement of the reasons for the Commission's denial.

The special permit system in Norwalk does not institute a system of individualized assessments that favor secular uses but disfavor religious uses, as would be required to justify the imposition of strict scrutiny under the Free Exercise Clause (or RLUIPA, at least as the United States reads it). Plaintiff and the United States attempt to stretch free exercise doctrine to mean that any case-by-case analysis is *per se* a system of "individualized assessment" that justifies strict scrutiny. On their theory, this Court's case-by-case approach to decision making would be

an "individualized assessment" worthy of strict scrutiny.  That is nonsensical and a misstatement of the law.  Only when case-by-case assessment favors secular uses while it disfavors religious uses does the system earn strict scrutiny under the Free Exercise Clause.  That is the basic holding of Sherbert v. Verner, 374 U.S. 398 (1963), affirmed, Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 884 (1990).

The Supreme Court in Smith, supra, reasoned that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason."  Id. at 884 (citing Bowen v. Roy, 476 U.S. 693, 708 (1986)).  As the United States points out, that means that for strict scrutiny to be triggered, the government must treat secular and religious uses differently.  U.S. Mem., at 27-28.  Deciding issues on a case-by-case basis is not enough by itself; there must also be a rule that religious uses are treated less well than secular uses.  In this case, there is no individualized assessment that treats religious uses less well than others, but rather a neutral, generally applicable set of local zoning regulations that are routinely applied to all special permit applications.  See ROR 83, § 118-1450.  Plaintiff's invocation of Sec. 2(a), therefore, is an interpretation of RLUIPA that takes it beyond its proper boundaries.  If RLUIPA means that local governments are subject to strict scrutiny every time they consider a particular application, then the statute oversteps the bounds of federalism and, as discussed below, the Establishment Clause.

Plaintiff's assertions about "faux federalism" demonstrate a surprising lack of understanding of constitutional doctrine. It argues that a local government does not have sovereign immunity, as a state does.  Pl.'s Opp'n, at 45.  That is true, but Defendants are not asserting sovereign immunity.  Rather, they are making the same sort of structural constitutional arguments that were successful in City of Boerne.  RLUIPA is an inappropriate exercise of

- 8 -

Congress's power as it exceeds the Constitution's inherent limits of federalism and the long line of cases forbidding the federal government from acting as a super land use board. Plaintiff would have been better off trying to struggle with the hard arguments raised against RLUIPA.

Plaintiff rests its next argument on the proposition that "[a]lthough RLUIPA intrudes to some degree on local land use decisions, RLUIPA does not violate principles of federalism if it is otherwise grounded in the Constitution." Pl.'s Opp'n, at 43 (quoting Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1242 (11th Cir. 2004)). This is a truism that fails to address RLUIPA's constitutional defects. Midrash involved a zoning ordinance excluding churches and synagogues from a business district where private clubs and lodges were permitted, which was challenged by two synagogues under RLUIPA. Id. at 1220. The ordinance was held invalid because it violated the equal terms provision of RLUIPA. Id. at 1231. This is in contrast to the instant matter as Plaintiff is not litigating over a facially discriminatory zoning ordinance, see supra n. 4 (the one purported facial attack is so vague as not to state a claim), but rather the denial of a permit application. Plaintiff was able to apply for a special permit and its application was denied based on neutral, generally applicable criteria, including the size of the proposed structure relative to the size of buildings in the surrounding neighborhood, and the effects it would have on the neighborhood by increasing traffic and the demand for parking. Defs.' Mot. to Dismiss at 6.

In Midrash, the Eleventh Circuit rested on New York v. United States, 505 U.S. 144 (1992), which actually offers little to defend RLUIPA. Midrash, 366 F.3d at 1242. The provisions of the federal Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. §§ 2021b et seq., that were upheld were constitutional under the Commerce Clause, because the transportation of goods across state lines is economic in nature. New York, 505 U.S.

at 149.  The provision of the statute in New York that was held unconstitutional, the "take-title" requirement, failed because it afforded the states no choice.  Id. at 176.  RLUIPA likewise gives local government no options—their land use law is disabled and carved up by federal courts applying strict scrutiny with no way out.  Their only choice is to give religious land developers more power to overcome their laws than secular developers.

     Neither Plaintiff nor the United States grapple with the fact that the Boerne decision did not rest solely on federalism grounds but also separation of powers and the procedures for amending the Constitution.  Like RFRA, RLUIPA offends the Constitution because it is a redefinition of the First Amendment in violation of Marbury v. Madison, 5 U.S. 137 (1803), and because it attempts to amend the federal Constitution without following the constitutionally mandated procedures in Art. V.  City of Boerne, 521 U.S. at 534-47.  Plaintiff offers no response to either of these defects.

     The Second Circuit did not even mention Boerne when upholding RLUIPA.  Westchester Day School, supra, 504 F.3d at 355.  In Boerne, the Supreme Court invalidated RFRA on multiple grounds, including federalism, violation of the separation of powers and the proper procedures under Art. V. RLUIPA, like RFRA, is unconstitutional for those very reasons, too. Westchester Day School briefly discussed the Commerce power and the Establishment Clause, but hardly comprehensively, and did not address separation of powers or Art. V.  However, the Supreme Court has not yet reached the issue of RLUIPA's constitutionality other than to address an Establishment Clause challenge to the institutionalized persons provisions of RLUIPA.  See Cutter v. Wilkinson, 544 U.S. 709 (2005).

     Plaintiff also resorts to City of Arlington, Tex. v. F.C.C., 133 S. Ct. 1863, 1873 (2013), to argue that RLUIPA is consistent with federalism doctrine, even though that case is irrelevant.

Pl.'s Opp'n, at 44.  Arlington v. F.C.C. had nothing to do with the federalism issues under RLUIPA, because the FCC's power rests on the traditional commerce power to regulate "the instrumentalities of interstate commerce, or persons or things in interstate commerce," United States v. Lopez, 514 U.S. 549, 558 (1995), as it is charged with regulating interstate and international communications by radio, television, wire, satellite and cable.  National Broadcasting Co. v. United States, 319 U.S. 190, 227 (1943); United States v. Cioni, 649 F.3d 276, 287 (4th Cir. 2011), cert. denied, 132 S. Ct. 437 (2011).

Plaintiff also cites to the decision in United States v. Windsor, 133 S. Ct. 2675 (2013), to assert the truism that "[s]tate laws … must respect the constitutional rights of persons, even where those laws regulate an area that has long been regarded as a virtually exclusive province of the States."  Pl.'s Opp'n, at 44-45 (citations omitted).  Defendants do not dispute this principle, but rather argue that Congress enacted a statute beyond Congress's power with RLUIPA.

Plaintiff finally argues that RLUIPA does not commandeer the states as it "does not require the States in their sovereign capacity to regulate their own citizens."  Pl.'s Opp'n, at 45 (quoting Reno v. Condon, 528 U.S. at 151).  Reno involved a challenge to the Drivers Privacy Protection Act, which restricted the states' ability to disclose drivers' personal information without the drivers' consent.  Reno, 528 U.S. at 143.  The Supreme Court held that this was a valid exercise of Congress's authority to regulate interstate commerce under the Commerce Clause, and that the states were not acting in their sovereign capacity, but rather as market participants, id. at 148, 151, which meant that no federalism issue was raised.  In sharp contrast, state and local governments enacting land use law are not acting as market participants, but rather through their own sovereign capacity in an arena that the Supreme Court has repeatedly stated and held belongs first and foremost to them.  Defs.' Mot. to Dismiss, at  21.  RLUIPA

commandeers the states in their sovereign capacity by forcing them to contort their land use laws and policies to give way to religious developers.

Plaintiff also relies on Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc., 452 U.S. 264 (1981), arguing that where a federal law presents a state with choice of not regulating a land use or regulating only in accordance with the statute's conditions, "there can be no suggestion that the Act commandeers the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." Id. at 288.  That case is distinguishable from the instant matter in that it involved a facial challenge to a law that regulated surface coal mining, which is economic in nature, and also involved safety concerns. Id. at 268.  This is different from RLUIPA, a law that regulates and nullifies local land use law, which is inherently non-economic in nature, and beyond the power of Congress.  RLUIPA is an extraordinary aggrandizement of Congress's power at the expense of the states' control over local land use and local governments carrying out their states' land use requirements.  Defs.' Mot. to Dismiss, at 10.[5]

### B.   Neither the U.S. Nor the Plaintiff Has Met Defendants' Argument that RLUIPA Violates the Establishment Clause or Distinguished Texas Monthly v. Bullock, 489 U.S. 1 (1989) from RLUIPA

The United States and the Plaintiff ignore the Supreme Court case that is most directly on point, Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989). In that case, Texas enacted a sales tax

---

5    Plaintiff also tries to shore up RLUIPA's constitutionality under Sec. 5 of the Fourteenth Amendment by arguing around the fact that land use law belongs first and primarily to local and state governments, contending that "[l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it . . . intrudes into 'legislative spheres of autonomy previously reserved to the States.'" Boerne 521 U.S. at 518 (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 455 (1976)). Pl.'s Opp'n, at 44. As the reasoning of Boerne underscores, section 5 of the Fourteenth Amendment is not properly exercised unless the federal law is congruent and proportional to widespread and persistent constitutional violations.  The actual record, as opposed to self-serving statements by its sponsors in Congress, shows that RLUIPA is not.  Defs.' Mot. to Dismiss, at 22.

exemption for religious publications consisting of writings wholly sacred to a particular religious faith.  Id. at 5.  The Court stated that by giving tax exemptions exclusively to religious publishers, the state was, in effect, indirectly taxing all secular publishers and forcing them to become indirect and vicarious donors.  Id. at 14.  By doing so, the state conveyed a message of endorsement of religion.  Id. Religious developers are in precisely the same relationship to secular developers; they have a privilege to avoid regulation that applies to everyone else, and, on Plaintiff's theory, to leapfrog the ordinary process as well.  RLUIPA literally subsidizes a significant portion of the cost of land development in favor of religious landowners.

Both the United States and the Plaintiff fail to acknowledge the fact that the land use side of RLUIPA is an undeniable financial benefit for land developers, not an aid to whether or not religious worship will be available at all, which is the focus of the prison, or institutionalized persons, provisions of RLUIPA.  Cutter, 544 U.S. at 721 ("RLUIPA … protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion").  RLUIPA creates the opportunity for religious landowners to purchase property at a discount, in a zone where their intense use is not allowed, and then use RLUIPA to circumvent the zoning regulations.  RLUIPA also promises the religious developer attorneys fees if the developer prevails, or, as often happens, as a non-negotiable aspect of settlement.  No secular developer gets any of these financial benefits.[6]

The same principle that financial and other benefits must be available to both religious and secular beneficiaries was reflected in the Eighth Circuit decision in Americans United for

---

[6] RLUIPA also, at least when interpreted as the Plaintiff would, permits a landowner to jump to federal court after a singular local decision and to avoid the ordinary appeals all other developers would have to pursue.

Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 425 (8th Cir. 2007).  In that case, a state prison system established and funded a program for prisoners that provided voluntary classes that taught civic virtue based almost entirely upon the Christian Bible. Justice O'Connor, sitting by designation in the Americans United case, explained that in administering aid, a government may not define recipients by reference to religion.  Rather, the aid must be "allocated on the basis of neutral, secular criteria that neither favor nor disfavor religion, and is made available to both religious and secular beneficiaries on a nondiscriminatory basis."  Id. at 813; see also Mitchell v. Helms, 120 S. Ct. 2530,  530 U.S. 793 (2000), quoting Agostini v. Felton, 521 U.S. 203, 231, 117 S.Ct. 1997; id. at 845, 120 S.Ct. 2530 (O'Connor, J., concurring in judgment).

### III. PLAINTIFF'S INVOCATION OF "UNFETTERED DISCRETION" IN THE NORWALK SPECIAL PERMIT PROCESS IS WRONG.

The Plaintiff's repeated assertions about "unfettered discretion" in the special permit process, Pl. Opp'n at 5, 9, 19, 28, 37, 38, 42, are unsupported by fact and invalid as a matter of law.  Connecticut cases hold that the criteria applied in this case are appropriate special permit considerations.  See, e.g., Cambodian Buddhist Soc. of Connecticut, Inc. v. Planning & Zoning Comm'n of Town of Newtown, 285 Conn. 381, 441-446 (2008) ; Ox Ridge Hunt Club v. Planning & Zoning Comm'n of Town of Darien, CV020191228, 2004 WL 574686, at *4 (Conn. Super. Ct. Mar. 8, 2004) .  A zoning commission must act within procedural and substantive limits set by state statute, see Irwin v. Planning & Zoning Commission, 244 Conn. 619, 627 (1998), and with substantial evidence in the record supporting its decision.  See Conn. Gen. Stat. § 8-8 (i).  The same standards are applied to *all* special permit applications, religious or not, and nothing in the Commission's final decision departs from these restraints.  Plaintiff's broad brush

and vague attack on the Connecticut special permit process is a legal conclusion in search of a process that does not exist.

Plaintiff's theory of unfettered discretion is the lynchpin to its arguments throughout its brief. Without the "unfettered discretion" prop to its arguments, Plaintiff has failed to state a claim under RLUIPA's Substantial Burden Provisions (Counts I, VI, and IX); RLUIPA's Nondiscriminatory Provision (Count II); RULIPA's Unreasonable Limits Provisions (Count III); RLUIPA's Equal Terms provision (IV); the Free Exercise and Free Speech Clauses (Count V); and under the Equal Protection Clause (Count VII). That leaves only its state law claims, which should be dismissed and heard where they belong—in state court.

## **CONCLUSION**

For the foregoing reasons and all of the arguments raised in the Motion to Dismiss and for Judgment on the Pleadings for Failure to State a Claim, Defendants respectfully request that this Court dismiss this case and enter judgment on the pleadings for failure to state a claim.[7]

---

[7] Although Plaintiff stated that it does not request oral argument, the Defendants, as the movants, believe that, given the importance and complexity of the constitutional issues implicated by the motion, oral argument would benefit the Court.

Respectfully submitted,

CITY OF NORWALK AND CITY OF
NORWALK ZONING COMMISSION

/s/ Joseph P. Williams
Joseph P. Williams (ct14809)
Katherine R. Husband (ct28564)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Telephone (860) 251-5000
Facsimile (860) 251-5218
Email:  jwilliams@goodwin.com
Email:  khusband@goodwin.com

Marci A. Hamilton, *pro hac vice*
36 Timber Knoll Drive
Washington Crossing, PA  18977
Telephone (215) 353-8984
Email: Hamilton.marci@gmail.com

Robert F. Maslan, Jr. (ct07919)
Corporation Counsel
City of Norwalk Law Department
P. O. Box 799
Norwalk, CT  06854-0799
Telephone (203) 854-7750
Facsimile (203)-854-7901
Email: rmaslan@norwalkct.org

## CERTIFICATION OF SERVICE

I hereby certify that on July 29, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Joseph P. Williams
Joseph P. Williams